**Entered on Docket**
**June 13, 2014**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: June 11, 2014**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>TARRA NICHOLE CHRISTOFF,<br>              Debtor.<br>_____<br>INSTITUTE OF IMAGINAL STUDIES<br>dba Meridian University,<br>              Plaintiff,<br>v.<br>TARRA NICHOLE CHRISTOFF,<br>              Defendant.<br>_____ | Bankruptcy Case<br>No. 13-10808DM<br><br>Chapter 7<br><br>Adversary Proceeding<br>No. 13-3186DM |

MEMORANDUM DECISION REGARDING
DISCHARGEABILITY OF EDUCATION LOAN

I.  INTRODUCTION

    The court is presented with an apparent case of first impression in this circuit: when a private educational institution finances a deferred payment of its tuition and related fees owed by one of its students that did not involve a third party loan or an exchange of funds, is that debt excepted from discharge under section 523(a)(8)?[1]

_____

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

-1-

In addressing the issue court must consider two powerful competing principles: the need to give the honest debtor a fresh start[2] and the seemingly endless desire of Congress to except more and more student loans[3] from discharge absent undue hardship.[4] At the same time it must adhere to the well-settled principle to begin its analysis with the words of the statute when those words are not ambiguous or will not lead to absurd results. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("when [a] statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms")(internal quotation marks omitted).

Despite the dire consequences, real or imagined, suggested by plaintiff's counsel that a ruling in defendant's favor may put his client out of business, the plain words of the applicable statute lead the court to conclude that the debt in question in this case, which did not include any receipt of funds by the student or the institution, is not excepted by § 523(a)(8) and is discharged in

---

[2] *See Central Va. Comm. College v. Katz*, 546 U.S. 356, 364 (2006) ("one of the [c]ritical features of every bankruptcy proceeding [is] ... the ultimate discharge that gives the debtor the 'fresh start' by releasing him, her or it from further liability for old debts"), citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).

[3] The court uses this simple term for convenience to refer to loans covered by § 523(a)(8).

[4] *See, e.g., Nash v. Conn. Student Loan Fdn. (In re Nash)*, 446 F.3d 188, 191 (1st Cir. 2006) ("Congress has made the judgment that the general purpose of the Bankruptcy Code to give honest debtors a fresh start does not automatically apply to student loan debtors. Rather, the interest in ensuring the continued viability of the student loan program takes precedence.").

-2-

the student's bankruptcy.

II. FACTS

There are no material facts in dispute.

Plaintiff, Institute of Imaginal Studies dba Meridian University ("Meridian"), is a California corporation licensed to do business in California. It is a private university licensed under California's Private Post Secondary Education Act of 2009 (Cal. Educ. Code § 94800, et seq.), by which hundreds of post secondary schools in California provide education to hundreds of thousands of students attending those schools. A graduate of Meridian could be eligible to become licensed by the State of California and practice as an independent, unsupervised psychologist.

Tarra Nichole Christoff ("Debtor") applied for admission to Meridian in 2002. In response, Meridian offered Debtor $6,000 in financial aid to pay a portion of her tuition. In connection with that application and acceptance process, Debtor signed an enrollment agreement acknowledging a $6,000 financial aid award and a 2002-03 promissory note in the principal amount of $6,000. Debtor did not receive any funds, but instead received a tuition credit. Repayment of the loan was to be made at $350 per month upon completion of Debtor's course work or her withdrawal from Meridian, and interest accrued at nine percent, compounded monthly.

The following year Debtor submitted a similar application and Meridian responded in a similar fashion. Debtor signed similar documents, including a 2003-04 promissory note in the principal

-3-

amount of $5,000.[5] Again, Debtor did not receive any funds, but instead received a tuition credit.

Debtor completed her course work in 2005. Later, in 2009, she sought an extended deferral of her loan payments for one year. That same year she withdrew from Meridian and since then, although completing her course work and clinical hours, has not completed her dissertation. She has failed to pay the balance due on the notes.

Pursuant to an arbitration clause in the underlying documentation, Meridian and Debtor litigated Debtor's obligations and in July 2012, an arbitrator ordered Debtor to pay the unpaid balance of $5,950, plus interest. At present the accrual of interest brings the total amount owed to Meridian to just over $7,000.

Debtor filed her chapter 7 petition on August 19, 2013, and Meridian thereafter filed this adversary proceeding to determine that the amount owed to it by Debtor was nondischargeable under § 523(a)(8). Meridian filed a motion for summary judgment on April 30, 2014. That motion came on for hearing on May 30, 2014, and, after hearing arguments of counsel, the court took the matter under submission.

III. DISCUSSION

A. Applicable Statutory Law.

Section 523(a)(8) provides, in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor

---

[5] Although these critical documents were signed before the 2005 amendments to the Bankruptcy Code, Meridian does not contend that the pre-2005 bankruptcy law applies here.

-4-

from any debt–

\* \* \*

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

11 U.S.C.A. § 523.

The foregoing statute describes and addresses different types of debtor-creditor relationships.[6] First, subsection (A)(i) deals with an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded by a governmental unit or nonprofit institution. Meridian concedes it does not fit that description.

Another type of relationship is found in subsection (B), and includes an educational loan qualified as such as defined in

---

[6] Some courts have said that under § 523(a)(8) there are actually four relationships excepted from discharge: loans made, insured or guaranteed by a governmental unit; loans made under any program partially or funded by a government unit or nonprofit institution; loans received as an educational benefit, scholarship or stipend; and any qualified educational loan as that term is defined in the Internal Revenue Code. See, *Rumer v. Am. Educ. Servs.(In re Rumer)*, 469 B.R. 553 (Bankr. N.D. Pa. 2012), quoted in *Liberty Bay Credit Union v. Belforte (In re Belforte)*, 2012 2012 WL 4620987 (Bankr. D. Mass. Oct. 1, 2012). For these purposes whether there are three or four different types of relationships that are implicated is immaterial. It is worthy to note, however, that *Rumer*, *supra*, alluded to § 523(a)(8)(A)(ii) as "loans received" as an educational benefit, scholarship or stipend when in fact the statute refers to "an obligation to repay funds received" under those circumstances.

-5-

section 221(d)(1) of the Internal Revenue Code. Meridian also concedes that it is not protected by that subsection.

The critical type of relationship for this case is found in subsection (A)(ii) and covers "an obligation to repay funds received as an educational benefit, scholarship or stipend." Meridian relies on these words in contending that Debtor's student loans are nondischargeable. Debtor concedes that subsection (A)(ii) is the applicable subsection but argues convincingly that since she did not receive funds from Meridian or anyone else, she can discharge the debt.[7]

Meridian argues that when Debtor obtained the loans to pay her tuition "the loan proceeds went directly to Meridian and she received the education. Meridian received the loan funds..." Opening Brief at 18:12-13. But no facts in the record support that statement; in fact Meridian simply agreed to be paid the tuition later. It did not receive any funds, such as from a third party financing source. Meridian is denominated the lender in the two promissory notes Debtor signed. Thus Meridian's examples of a loan to purchase a house or a car with funds paid directly to the seller are not applicable.

Meridian also argues that when a student receives a federally backed Stafford loan for tuition the funds are paid to the school, not the student. That is true, and leaving aside that a Stafford

---

[7] Meridian has conceded that if the court determines that subsection (A)(ii) applies, Debtor will be given an opportunity to amend her answer to plead "undue hardship" in an attempt to discharge her obligation to it. Because the court agrees with Debtor, there is no need for such an amendment. Debtor also argued that she had not incurred any obligation from Meridian "as an educational benefit, scholarship or stipend," but the court does not need to reach that issue.

-6-

Case: 13-03186   Doc# 37   Filed: 06/11/14   Entered: 06/13/14 13:51:40   Page 6 of 17

loan likely comes within the first category of nondischargeable student loans because of the federal backing (subsection (A)(i)), it also involved "funds received" by the school. Not so here.

Prior to the 2005 amendments generally known as BAPCPA[8] section 523(a)(8) divided nondischargeable loans into two categories (not three as noted above). BAPCPA divided those two categories into subsections (A)(i) and (ii) and added subsection (B).[9]

The restructuring of § 523(a)(8) gives rise to the statutory interpretation issues presented in this case. Of critical importance is the fact that student loans backed by governmental units or made by nonprofit organizations are specifically described as "educational benefit overpayment(s) or loan(s)" and student loans that qualify under the Internal Revenue Service under § 523(a)(8)(B) are referred to as "any other educational loan." Conversely, newly separated subsection (A)(ii) refers to "an obligation to repay funds received as an educational benefit, scholarship or stipend," without reference to educational loans or any other kind of loan.

B. <u>The Case Law</u>.

At first blush it would appear that the issue is well settled in Meridian's favor because case after case deals with whether or not particular arrangements between students and their educational providers did or did not constitute a "loan" under § 523(a)(8).

---

[8] BAPCPA refers to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23.

[9] A concise history of the several amendments to these provisions prior to BAPCPA is found in *Johnson v. Missouri Baptist College (In re Johnson)*, 218 B.R. 449 (8th Cir. BAP 1998).

-7-

For example, in *McKay v. Ingleson*, 558 F.3d 888 (9th Cir. 2009), the court examined an agreement between the debtor and Vanderbilt University referred to as a Professional Student Account and Deferred Agreement, concluding that under the ordinary meaning of the term loan, what that debtor entered into with her university was a loan. *McKay*, 558 F.3d at 889. The court also relied on dictionary definitions and heavily on *Johnson,* where the court was faced with a similar issue.

The *Johnson* court presented the issues squarely:

> Applying these definitions to the facts before us, we conclude that the arrangement between Johnson and the College constitutes a loan. Johnson's promise to remit the cost of tuition to the College in exchange for the opportunity to attend classes created a debtor/creditor relationship. She signed a promissory note to evidence her debt. By allowing Johnson to attend classes without prepayment, the College was, <u>in effect</u>, "advancing" funds or credits to Johnson's student account. Johnson drew upon these advances through immediate class attendance. <u>It is immaterial that no money actually changed hands</u>.

*Johnson*, 218 B.R. 457 (emphasis added) quoted by *McKay*, 558 F.3d at 890.

Note that the *Johnson* court, and thus the Ninth Circuit in *McKay* by its adoption of that reasoning, did not say that the institution had advanced funds to the student, but only "in effect" had, and therefore the court believed that it is "immaterial that no money actually changed hands."

But *Johnson* and *McKay* both apply the law prior to BAPCPA and construe the agreements they were presented with in a different statutory context. More specifically, the question before those courts, and others mentioned below, was whether the arrangements constituted an educational loan (as those two did). In each case the applicable statute, in one sentence, blended overpayments,

-8-

loans, and obligations to repay funds:

> 11 U.S.C. § 523(a)(8) excepts from discharge a debt "for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend...." Since the parties stipulate that the College is a non-profit institution and that the credit was extended for educational purposes under a program, the only issue presently on appeal is whether the College's extension of credit was a loan.

*Johnson*, 218 B.R. at 450-51.

*Johnson* concluded that the transaction was an educational loan. In contrast, *In re Chambers*, 348 F.3d 650 (7th Cir. 2003), involved a situation where no funds changed hands between the institution and the debtor, nor was there a prior or contemporaneous agreement to pay tuition at a later date. Rather, the court, relying on *Cazenova College v. Renshaw (In re Renshaw)*, 229 B.R. 552 (2d Cir. BAP 1999), *aff'd*, 222 F.3d 82 (2d Cir. 2000), concluded that in the absence of money changing hands or an agreement to pay tuition at a later date in exchange for the extension of credit, there was no educational loan for purposes of § 523(a)(8).

At oral argument counsel for Meridian cited an unpublished decision from this district, *In re Weeks*, 2000 WL 268466 (Bankr. N.D. Cal. Feb. 16, 2000) (Jaroslovsky, J.). There the debtor had been a student at McGeorge School of Law and had entered into a deferred payment plan contract. At the time he filed chapter 7, the amount owing to McGeorge was $5,009. When the debtor requested his transcript and the University refused, the debtor

sought contempt for violation of the automatic stay.[10]

The court opined that if this were a case of first impression, it might find § 523(a)(8) inapplicable where, as here, no funds had changed hands. But the court chose to rely on decisions in other jurisdictions that concluded that arrangements made by the educational institutions and the debtors in those cases came within the words of the statute. Specifically the court chose to follow *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738 (6th Cir. 1992); *U.S. v. Smith*, 807 F.2d 122 (8th Cir. 1986), and *DePasquale v. Boston Univ. School of Law (In re DePasquale)*, 225 B.R. 830 (1st Cir. BAP 1998). None of those decisions, however, analyze the phrase "funds received," but instead focused on whether certain arrangements constituted loans. Thus, though the court in *Weeks* felt bound by prior case law, this court does not, principally because of the statutory changes by BAPCPA in 2005.

It is worth noting that the court in *Weeks* did cite to *Renshaw*, 229 B.R. at 552, a decision it noted was in the minority but declined to follow because to do so would create a conflict with the two court of appeals decisions cited above. The *Renshaw* court was asked to consider what was described as a Reservation Agreement between a student and Cazenova College. The Second Circuit BAP concluded that the agreement was not an educational benefit overpayment, nor any educational loan made, but instead constituted a purchase and sale of goods and services. Of note,

---

[10] The court noted that rather than the automatic stay, the debtor was really seeking to enforce his discharge injunction under § 524(a)(2), but there could be no contempt in any event if the debt was nondischargeable.

-10-

however, is what was not before the court:

> At oral argument, Cazenova conceded that, since there were no funds actually received by Renshaw, the last portion of Section 523(a)(8), which reads "or for an obligation to repay funds received as an educational benefit, scholarship or stipend," was not applicable. This is consistent with the statement in the Bankruptcy Court Order that "It is undisputed by the parties that there was no transfer of funds ..." and the Court's factual finding, which was not clearly erroneous, that "there is no advance of funds ..." (*Order at page 11.*) Based upon this concession and the Bankruptcy Court's factual finding, the requirements for nondischargeability that are set forth in the last portion of Section 523(a)(8) have not been legally satisfied.

*Renshaw*, 229 B.R. at 555, n.5.[11]

In *Renshaw*, the Court of Appeals had before it two cases, each of which involved nonprofit colleges that had brought adversary proceedings against debtors to determine the nondischargeability of obligations that they characterized as nondischargeable student loans. Both were nonprofit institutions, and therefore the key question before the court was whether under § 523(a)(8) the transactions constituted educational loans.[12]

For each college the court rejected the arguments that the transactions were educational loans. Of relevance to this case, the court referred to an alternative that would have rendered nondischargeable "obligation[s] to repay funds received as an educational benefit, scholarship or stipend." The court commented that:

> The colleges wisely do not rely on the 'obligation to repay funds received' provision because it is undisputed that

---

[11] The Second Circuit's affirmance of its own circuit's BAP decision, of course, created the circuit conflict the Weeks author sought to avoid.

[12] *Renshaw* was decided prior to BAPCPA. Under the present statutory scheme, those colleges would have been relying on § 523(a)(8)(A)(i).

-11-

neither student received funds.[13]
*Renshaw*, 222 F.3d at 92.

The Second Circuit concluded that the debtor (Mr. Renshaw) was obligated to pay his tuition on a date in the future, and thus was not obligated to repay a loan. His default created the debt. Because the college had not advanced money or promised goods or services in return for a promise of payment in the future, § 523(a)(8) was not available to save the debt from discharge. *Renshaw*, 222 F.3d at 89.

The Second Circuit referred to other cases that found that the nonpayment of tuition qualifies as a nondischargeable student loan in two situations: where funds have changed hands (not the present case) and where there is a pre-exiting agreement between the student and the institution whereby the institution extends credit in return for the student's promise to pay in the future, such as by a promissory note (plainly the present case). *Renshaw*, 222 F.3d at 90, citing *Merchant*, 958 F.2d at 738.

The analysis changes, however, because BAPCPA amended § 523(a)(8) to separate "funds changing hands" or "funds received" into a separate category delinked from the phrases "educational benefit or loan" in § 523(a)(8)(A)(i) and "any other educational loan" in § 523(a)(8)(B). Thus, although the promissory notes signed by Debtor constitute a loan, loans are addressed only in subsections (A)(i) and (B), which Meridian concedes are inapplicable. Subsection (A)(ii) does not cover loans, but only

---

[13] Under the current law, that argument would have been made, as it has been made in the instant case, under § 523(a)(8)(A)(ii).

-12-

"funds received" for an educational benefit, scholarship or stipend.

Cases either cited by the parties or located by the court are largely distinguishable except one *(In re Oliver)*, discussed below.

One category of cases involves situations where a third party's advance of funds comes within § 523(a)(8)(A)(ii) as "funds received." Thus, in *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828 (Bankr. E.D. Wis. 2008), the debtor sought to discharge obligations owing to her employer under an educational expense reimbursement program. Because the employer had granted requests by the debtor for tuition and book expenses, the unpaid amounts she owed were found to be an obligation to pay funds received as an educational benefit.

Similarly, the case of *Benson v. Corbin (In re Corbin)*, 506 B.R. 287 (W.D. Wa. 2014), involved a co-signed student loan that was paid by the co-signor who sought to have her reimbursement rights determined nondischargeable. While the court rejected a subrogation theory based upon what it felt was controlling precedent, it concluded that the debtor's obligation to the co-signor was an obligation to repay "funds received" for an educational debt within the meaning of § 523(a)(8)(A)(ii). *Brown v. Rust (In re Rust)*, 2014 WL 1796154 (Bankr. E.D. Ky. May 6, 2014), is similar to *Corbin* and thus equally distinguishable. *See also Maas v. Northstar Education Financing, Inc. (In re Maas)*, 497 B.R. 863 (Bankr. W.D. Mich. 2013).

In *Beesley v. Royal Bank of Canada (In re Beesley)*, 203 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013), the court reached a

-13-

similar result where the debtor had drawn on a line of credit from a private lender in order to pay her expenses for attending medical school. The debtor had used the proceeds of a line of credit to pay educational expenses, and the court had no trouble following *Maas* and other courts that correctly recognize third party loans as falling into the "funds received" reach of § 523(a)(8)(A)(ii).

*Beesley* and *Belforte*, 2012 WL 4620987 at 4-5, each involve third party loans that were held nondischargeable. Each decision cites *Rumer*, 469 B.R. at 561, which stated that § 523(a)(8) protects four categories of educational loans, including "loans received as an educational benefit, scholarship or stipend." In fact, what is excepted from discharge as "an educational benefit, scholarship or stipend" is "funds received" not "loans received." Thus, those decisions are not helpful here.

In *Carow v. Chase Student Loan Service (In re Carow)*, 2011 WL 802847 (Bankr. D. N.D. Mar. 2, 2011) the court faced the same conclusion in determining that loans from a financial institutions to allow a debtor to pay for educational expenses and living expenses were nondischargeable. Again, the presence of a third party lender who actually advanced funds to the debtor makes that case completely distinguishable.

Several courts rely on *Roy v. Sallie Mae (In re Roy)*, 2010 WL 1523996 (Bankr. D. N.J. April 15, 2010), for the proposition that a loan for educational training falls within the same statutory reach. But *Roy* simply stated that "it is enough that the debt at issue be 'an obligation to repay funds received as educational benefit' without describing whether there was a third

-14-

party loan, or whether funds actually changed hands, or just what the situation was. It simply stated that the loan at issue here, which provided an educational benefit to the debtor's child in the form of tutoring, was not dischargeable.

Thus that case is of no particular help to the court in the present matter. *See also The Rabbi Harry H. Epstein School, Inc. v. Goldstein (In re Goldstein)*, 2012 WL 7009707 (Bankr. N.D. Ga., Nov. 26, 2012). There the court concluded that the school's agreement to defer alternative payments constituted an educational loan for purposes of § 523(a)(8)(A)(ii), but made no analysis as to whether or not they were "funds received."

The court has located only one decision that appears to be on point, *In re Oliver*, 499 B.R. 617 (Bankr. S.D. Ind. 2013). There Ball State University withheld the debtor's transcript because she had not paid certain tuition charges and related fees. Ball State had not advanced any money to the debtor nor had it reimbursed any federal agency for any of the student loan proceeds. The court felt that *In re Chambers*, *supra*, would be binding but for BAPCPA. Although Ball State had advanced no funds, it argued that the terms of a registration contract with the debtor met the *Chambers* test for a loan prior to the provision of educational services.

*Oliver* examined *Renshaw* and *Chambers* and concluded that
> Congress has not departed from the notion that a 'student loan' excepted from discharge <u>still must be a loan</u>.

499 B.R. at 623 (emphasis added).

Finally, *Oliver* noted that in order to be obligated to repay funds received, the debtor has to have received funds in the first place. Ball State did not advance its own funds to or for the

-15-

benefit of the debtor nor did it receive funds from a third party lender.

This court concurs completely with the *Oliver*'s court conclusion that:

> Because the court finds that debtor did not receive funds from Ball State, she has no obligation to repay funds she did not receive. Thus, the Debt was not excepted from discharge pursuant to § 523(a)(8)(A)(ii).

499 B.R. at 625.

IV. CONCLUSION

Because Meridian is not a governmental unit nor did its extension of credit to Debtor involve any insurance or guaranties by governmental units or nonprofit institutions, and because the extension of credit was not a qualified education loan under the Internal Revenue Code, Meridian's sole source of protection is in § 523(a)(8)(A)(ii). Because Debtor's obligations under applicable documents were to pay the amount under the Promissory Notes, and thereafter by the arbitration award, but did not flow from "funds received" either by her as the student or by Meridian from any other source, the debt is not covered by this section and is therefore eligible for discharge in Debtor's discharge.

Counsel for Debtor should submit an order denying Meridian's motion for summary judgment, and because the matter presented is fully resolved as a matter of law, that form of order should also grant Debtor summary judgment in her favor, discharging her obligation to Meridian. At the same time counsel for Debtor should prepare and upload a judgment in this adversary proceeding

-16-

discharging all of the debts owed to Meridian.  Counsel should comply with BLR 9021-1.

**END OF MEMORANDUM DECISION**

-17-